**Henry D. KANE, Plaintiff**

v.

**VSI METER SERVICES, INC., Defendant.**

**Civil No. 10–123–P–H.**

United States District Court, D. Maine.

July 8, 2010.

---

**167.** *See Asociacion de Educacion Privada de P.R.,* 490 F.3d at 21.

**168.** *See Volle,* 69 F.Supp.2d at 177 n. 10.

William L. Vickerson, Levenson Vickerson, Portland, ME, for Plaintiff.

Barbara L. Goodwin, Murray Plumb & Murray, Portland, ME, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

D. BROCK HORNBY, District Judge.

On May 17, 2010, 2010 WL 1994790, I granted the defendant employer's motion to dismiss on grounds of federal preemption and granted the plaintiff employee leave to amend. Now the employee has filed an amended complaint charging his employer in two counts: interfering with his ERISA-protected rights to certain medical benefits under the employer's welfare benefit plan, in violation of 29 U.S.C. § 1140; and violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(1), (b)(3)(A), for discriminating against him based upon a heart attack and surgery. The employer has moved to dismiss the first count for failure to exhaust administrative remedies and the second count because the original motion to amend (and hence my Order granting it) did not extent to asserting an ADA claim. The employer's motion is **DENIED**.

### FACTS AS ALLEGED IN THE AMENDED COMPLAINT

According to the Amended Complaint, the employee took a week of unpaid vacation leave, with his employer's permission, between Christmas 2007 and New Year's Day 2008. Am. Compl. ¶¶ 12–13 (Docket Item 17). On December 26, 2007, while on leave, he suffered a heart attack. *Id.* ¶ 14. On December 27, he had quadruple bypass surgery. *Id.* At the time he was a member of his employer's welfare benefit plan. *Id.* ¶ 11. Upon learning of the heart attack and surgery, his employer terminated him from employment and backdated the decision to December 21, 2007, the last day he had been at work. *Id.* ¶ 17. This

employer's decision resulted in the Plan Administrator (the employer's parent company) withdrawing the payments it had been making to his medical providers and refusing to pay medical bills. *Id.* ¶¶ 19–20. This in turn prevented the employee from obtaining follow up care and rehabilitation services. *Id.* ¶ 22.

## DISCUSSION

### A. ERISA Claim

In Count 1, the employee asserts that his retroactive termination was "intended to and in fact did interfere with Plaintiff's right(s) to benefits under the Plan in violation of 29 U.S.C. § 1140." *Id.* ¶ 26.

Section 1140 provides:

It shall be unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this subchapter.... The provisions of [29 U.S.C. § 1132] shall be applicable in the enforcement of this section.

29 U.S.C. § 1140.

■■■ The employer asserts that the employee may not proceed on this claim because he has not exhausted his administrative remedies, namely, that he has failed to appeal the Plan's denial of benefits. Def.'s Mot. to Dismiss Am. Compl. at 5 (Docket Item 18). The employee says that exhaustion is not required for a § 1140 statutory interference claim and that, in any event, exhaustion would have been futile because the Plan Administrator interpreted the Plan properly and that it was only his employer who did wrong by terminating him and backdating the decision. Pl.'s Objection to Def.'s Mot. to Dismiss at 5 (Docket Item 20).

The circuit caselaw is divided about the need to exhaust administrative remedies when an employee makes a straight statutory claim (rather than a plan-based claim) under § 1140.[1] *Compare Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007) (exhaustion not required); *Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir.1999) (same); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir.1990) (same); *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984) (same), *with Counts v. American Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir.1997) (exhaustion is required); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996) (district court has discretion to require exhaustion as a prerequisite to bringing a statutory ERISA claim). The First Circuit requires exhaustion of administrative remedies for *contractual* claims under ERISA. *Morais v. Central Bev. Corp. Union Employees'*

---

1. The Second, Third, and Fifth Circuits have held that under ERISA, exhaustion of remedies is an affirmative defense rather than a jurisdictional element. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir.2006) (holding that "a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense"); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir.2007) ("The exhaustion requirement is a nonjurisdictional affirmative defense."); *Wilson v. Kimberly–Clark Corp.*, 254 Fed. Appx. 280, 286–87 (5th Cir.2007) (holding that exhaustion is an affirmative defense to an ERISA claim and that a plaintiff need not plead or demonstrative exhaustion to avoid 12(b)(6) dismissal); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 309 (5th Cir.2008) (exhaustion is an affirmative defense). The First Circuit has held that a district court should grant a Rule 12(b)(6) motion based on an affirmative defense only if the facts establishing that defense are "definitively ascertainable from the complaint and other allowable sources of information" and "suffice to establish the affirmative defense with certitude." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir.2008) (citation omitted).

*Supplemental Retirement Plan,* 167 F.3d 709, 712 n. 4 (1st Cir.1999). In *Madera v. Marsh USA, Inc.,* 426 F.3d 56 (1st Cir. 2005), the court explained that where an employee is making a claim for past due benefits (in *Madera,* severance pay) based upon a § 1140 violation and suing both his employer and the Plan, the claim is subject to the same principle:

A claim for the wrongful denial of benefits, such as the one here, is not to be treated as a "statutory" claim, but rather as a "contractual" one. We have explicitly recognized that the argument that a "claim for past due benefits is based not on the contract but on the violation of ... statutory rights under ERISA and is thus not subject to the exhaustion requirement ... is a simple contract claim artfully dressed in statutory clothing. If we were to allow claimants to play this characterization game, then the exhaustion requirement would be rendered meaningless."

426 F.3d at 63 (quoting *Drinkwater v. Metro. Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.1988)). Here, the employee says that he is not making "a claim for past due benefits" as in *Madera* because he seeks nothing from the Plan or the Plan Administrator. Pl.'s Objection at 7. Instead, he seeks from his employer reinstatement and back pay, and compensatory damages for medical bills and expenses, emotional distress and mental anguish. Am. Compl. at 5 (Prayer for Relief).

However, any claim for § 1140 relief proceeds under § 1132. 29 U.S.C. § 1140; *Fitzgerald v. Codex Corp.,* 882 F.2d 586, 589 (1st Cir.1989); *see also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). I am not yet called upon to decide what relief might be available under § 1132. Some circuits have held that only subsection (a)(3) of § 1132 can be used to seek relief for a § 1140 violation. *See, e.g., Eichorn v. AT & T Corp.,* 484 F.3d 644, 652–53 (3d Cir.2007); *see also Eichorn v. AT & T Corp.,* 489 F.3d 590, 592 (3d Cir.2007) (Ambro, J., concurring in denial of rehearing en banc). Section 1132 provides that a participant, beneficiary, or fiduciary may seek "(A) to enjoin any act or practice which violated any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132. Thus, reinstatement may be available without exhaustion, perhaps back pay (often called equitable relief) also without exhaustion, and a contractual claim for benefits (perhaps requiring exhaustion according to *Madera* ). But ERISA may not allow for compensatory damages for a § 1140 violation. At the very least, then, the exhaustion question is complicated in this lawsuit against the employer who terminated the employee retroactively.

In any event, the employee has alleged in the Amended Complaint that it is futile for him to appeal to the Plan Administrator, because it is his employer, not the Plan Administrator, who changed his status retroactively. Am. Compl. ¶¶ 27–28. The First Circuit has recognized the availability of the futility exception to exhaustion. *See Madera,* 426 F.3d at 62 (citing *Drinkwater,* 846 F.2d at 826). The futility allegation here is "plausible on its face." *SEC v. Tambone,* 597 F.3d 436, 442 (1st Cir.2010) (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). At this stage of the case, I know neither the Plan language nor the specific acts, and thus it is unlike the cases where the First Circuit has found no futility *after* the record was developed and presented at summary judgment. *See Madera,* 426 F.3d at 62–63; *Drinkwater,* 846 F.2d at 826.

In light of these complexities, I think it advisable to have a fully developed record before ruling on the consequence of any failure to exhaust. I therefore **DENY** the motion to dismiss Count 1 of the Amended Complaint.

### B. ADA Claim

 The employee initially made no federal ADA claim in this lawsuit for the termination resulting from his heart attack and surgery. Instead, he filed his lawsuit solely as a Maine Human Rights Act claim in state court. It is true that in granting the original motion to dismiss on preemption grounds, I recognized that he had not alleged the necessary elements of a federal ADA claim (Maine law is less demanding[2]). It is also true that he did not ask for permission to add a federal ADA claim at that time. But had he so requested, I would have granted the motion, given the procedural history of removal, and therefore I do so now. There is no undue prejudice to the defendant at this early stage of the lawsuit for the plaintiff to add a federal ADA claim. The basic facts of the case remain the same, and I see no evidence of undue delay, bad faith, or dilatory motive on the part of the plaintiff that would lead me to deny amendment. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

 As to the motion to dismiss, the plaintiff has pleaded that due to his inability to pay medical expenses, he has not been able to make a "complete and full recovery" from his heart attack. Am. Compl. ¶ 22. On a motion to dismiss, I take as true all facts pleaded in the plaintiff's complaint and make all inferences in the plaintiff's favor. *Martino v. Forward Air, Inc.,* 609 F.3d 1, 1–2 (1st Cir.Mass. 2010). It is reasonable to infer (and plausible on its face) that incomplete recovery from a heart attack and a quadruple coronary bypass, Am Compl. ¶ 14, would "substantially limit" the plaintiff's ability to work. 42 U.S.C. § 12102(1)(A) (2007).

I therefore **DENY** the motion to dismiss Count 2 of the Amended Complaint.

**So Ordered.**

---

2. The employee claims that he is disabled due to heart disease, which Maine law considers to be a disability "[w]ithout regard to severity." 5 M.R.S.A. § 4553–A(1)(B) (2007). He now alleges that his heart disease "substantially limits a major life activity [, i.e.,] working," Am. Compl. ¶ 30 (Docket Item 17), which satisfies the requirements of the ADA (and Maine law). See 42 U.S.C. § 12102(1)(A) (2007) ("The term 'disability' means … a physical or mental impairment that substantially limits one or more major life activities."); 5 M.R.S.A. § 4553–A(1)(A) (2007) (" 'Physical or mental disability' means … [a] physical or mental impairment that … [s]ubstantially limits one or more of a person's major life activities.").